UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Toua Pao Lee,

    Petitioner,

Case No. 16-cv-2776 (DWF/SER)

v.

**REPORT AND RECOMMENDATION**

Jeff Sessions,[1] John F. Kelly,[2] Sarah Saldana, and Warden of Carver County,

    Respondents.

---

STEVEN E. RAU, United States Magistrate Judge

This above-captioned case comes before the undersigned on Petitioner Toua Pao Lee's ("Lee") Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") [Doc. Nos. 1, 3-1].[3] This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying the Petition as moot and dismissing this case without prejudice.

---

[1] On February 9, 2017, Jeff Sessions became the Attorney General of the United States, succeeding Loretta E. Lynch. *See Office of the Attorney General*, United States Dep't of J., https://www.justice.gov/ag (last visited Mar. 1, 2017). Jeff Sessions is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

[2] On January 20, 2017, John F. Kelly became the Secretary of Homeland Security, succeeding Jeh Johnson. *See Secretary of Homeland Security*, Dep't of Homeland Sec., https://www.dhs.gov/secretary (last visited Mar. 1, 2017). John F. Kelly is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

[3] Shortly after filing this case, Lee filed a nearly identical case. *See Lee v. Lynch*, No. 16-cv-2788 (DWF/SER) (filed Aug. 19, 2016). The Honorable Donovan W. Frank consolidated the two cases, and the Court construes the petition in the later-filed case [Doc. No. 3-1] as the operative petition in the instant case. *See* (Order for Consolidation) [Doc. No. 2]; (Placeholder for Docs. Previously Filed in Case 16-cv-2788 (DWF/SER) [Doc. No. 3]; (Order Dated Sept. 27, 2016) [Doc. No. 5 at 1 n.1]. Therefore, all remaining citations to the Petition refer to Document Number 3-1.

**I.     BACKGROUND**

In his Petition, Lee—a native and citizen of Laos—alleged that he was taken into the custody of U.S. Immigration and Customs Enforcement ("ICE") on January 7, 2016. (Pet. ¶ 6). On February 4, 2016, an immigration judge ordered Lee removed to Thailand, or in the alternative, to Laos. (Ex. 1, Attached to Decl.) [Doc. No. 7-1 at 12];[4] *see also* (Pet. ¶ 11). Over six months passed between the date that removal was ordered and the date the Petition was filed. Lee, invoking *Zadvydas v. Davis*, 533 U.S. 678 (2001), requested his immediate release from custody. (Pet. at 6).

On August 30, 2016—twelve days after the filing of the Petition—Lee was released from custody, subject to certain conditions. *See* (Resp. to Habeas Pet., "Resp.") [Doc. No. 6 at 1]; (Ex. 1). Respondents then answered the Petition, arguing this Court lacks subject matter jurisdiction over the Petition because it had become moot on account of Lee's release. *See* (Resp.). The Court ordered supplemental briefing "addressing why the voluntary-cessation exception to the mootness doctrine should not apply in this case" based on Lee's release soon after the filing of his Petition. (Order Dated Oct. 11, 2016, "Oct. 2016 Order") [Doc. No. 10 at 4]. The Court's attempts to send mail to Lee at the address he provided in his Petition were unsuccessful, likely due to his release. *See* (Mail Returned as Undeliverable) [Doc. Nos. 4, 9]. The Court also directed Respondents to provide Lee with the October 2016 Order and related documents because the conditions of Lee's release suggests that ICE can locate him. (Oct. 2016 Order at 4).

---

[4]     Exhibit 1 is filed as one document on CM/ECF but contains several independently paginated documents. When citing to Exhibit 1, the Court will refer to the page numbers assigned by CM/ECF.

Respondents filed a supplemental response and the declaration of Robert Johnson ("Johnson"), a supervisory detention and deportation officer with ICE. (Suppl. Resp. to Habeas Pet., "Suppl. Resp.") [Doc. No. 13]; (Decl., "Johnson Decl.") [Doc. No. 14]. Johnson describes what Respondents refer to as "a systemized process for detention reviews." *See* (Suppl. Resp. at 3). Relevant to Lee's case in particular, Johnson averred the following. ICE requires an initial Post Order Custody Review within ninety days following a final removal order. (Johnson Decl. ¶ 4). In Lee's case, at this initial review, an enforcement removal operations officer ("ERO") recommended continued detention for Lee on April 29, 2016, based on his criminal history. (Johnson Decl. ¶ 6); (Ex. 2, Attached to Johnson Decl.) [Doc. No. 14-1 at 8].[5] Lee's case was referred to Head Quarters Removal and International Operations ("HQ RIO") for an assessment regarding whether there was a significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"). (Johnson Decl. ¶ 6); (Ex. 2 at 18). In the transfer checklist sent to HQ RIO, the ERO noted that both the Laotian embassy and the Thai consulate refused to issue Lee travel documents. (Ex. 2 at 10, 15). On May 26, 2016, HQ RIO decided to continue to detain Lee "based on his criminal history and a SLRRFF determination." (Johnson Decl. ¶ 6); *see also* (Ex. 2 at 5–6). The HQ RIO commented that, based on a recent meeting with officials at the Laotian embassy, travel document requests "will be reconsidered from denial and be issued." (*Id.* at 6). Thus, the officer noted that "[r]epatriation is expected." (Ex. 2 at 6). On August 3, 2016, an ERO submitted a transfer checklist to HQ RIO, which noted that efforts to obtain a travel document were ongoing. (Johnson Decl. ¶ 7); (Ex. 2 at 3–4). HQ RIO decided to release Lee on August 30, 2016, stating that there was "[n]o SLRRFF" because the Laotian embassy "denied travel

---

[5]  Exhibit 2 is filed as one document on CM/ECF but contains several independently paginated documents. When citing to Exhibit 2, the Court will refer to the page numbers Respondents have provided for Exhibit 2, which coincides with the page numbers assigned by CM/ECF.

document issuance based on 'Article 20 of the Lao National Law, that this subject resided in other countries for more than seven years without authorization.'" (Ex. 2 at 2).

Respondents attempted to provide copies of the October 2016 Order and related documents to Lee, but were unsuccessful. (Certificate of Service) [Doc. No. 15]; (Return of Service Unexecuted) [Doc. No. 16] (stating that documents sent via U.S. mail to Lee were returned as undeliverable). Following Lee's subsequent "check in" with ICE in January 2017, Respondents again mailed documents to Lee at his updated address on February 1, 2017. (Certificate of Service) [Doc. No. 17]. Although Lee was provided an opportunity to respond to the Supplemental Response, to date, he has not done so. *See* (Oct. 2016 Order at 4). Thus, Lee's Petition is ripe for consideration.

## II.  DISCUSSION

### A.  Legal Standard

An alien who has been ordered removed must be removed within ninety days, the "removal period," subject to certain exceptions. 8 U.S.C. § 1231(a)(1)(A). An alien who is considered inadmissible based on his or her criminal convictions "may be detained beyond the removal period, and if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." *Id.* § 1231(a)(6). The United States Supreme Court held that § 1231(a)(6) contains "an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas*, 533 U.S. at 682. In particular, the Court found that unless there is a significant likelihood of removal, an alien may only be kept in custody subject to a final removal order for six months. *Id.* at 701; *see also Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007) (Schiltz, J.).

4

Lee's release requires this Court to consider whether it has subject matter jurisdiction. "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi,* 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (internal quotation marks omitted). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . . The parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (omission in original) (internal quotation marks omitted). In other words, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Ali*, 419 F.3d at 723 (omission in original) (internal quotation marks omitted). When a case is moot under Article III, it must be dismissed for lack of subject-matter jurisdiction. *Id.* at 724.

The Court can no longer grant the relief Lee seeks—release from custody—because that relief has been effected. But, as stated in the October 2106 Order, Lee's release does not automatically render his Petition moot. *See Spencer*, 523 U.S. at 7; *Ali*, 419 F.3d at 724. Whether Lee's Petition is moot "depends on potentially applicable exceptions to the mootness doctrine," and the Court must ensure that the exceptions do not apply to Lee before dismissing his Petition. *See Sayonkon v. Beniecke*, No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (Keyes, Mag. J.), *adopted by* 2012 WL 1622545 (May 9, 2012) (Davis, C.J.). A petition

> should not be dismissed as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of

5

repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."

*Id.* (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002)).

### B.     Analysis

The Court addresses each of the exceptions to the mootness doctrine in turn, and concludes that none of them apply to Lee's Petition. Therefore, the Court recommends the Petition be dismissed.

#### 1.     Continuing Injury

The first exception applies when there is a "concrete and continuing injury other than the now-ended incarceration or parole." *Spencer*, 523 U.S. at 7. Here, there is no continuing injury based on Lee's conditions of release because they are not a collateral consequence of his allegedly illegal detention, which is the subject of his Petition. *See Sayonkon*, 2012 WL 1621149, at *2; *see also Camara v. Comfort*, 235 F. Supp. 2d 1174, 1176 (D. Colo. 2002) ("The primary injury alleged in the petition . . . was Petitioner's illegal detention, not the final order of removal to which he is subject. Since the conditions in the order of supervision flow, not from Petitioner's illegal detention, but from the final order of removal, they are not collateral consequences of Petitioner's detention, and therefore cannot sustain the petition's justiciability under Article III."). Instead, his conditions of release "flow from his final order of removal." *See id.* Further, the conditions imposed on Lee's release are reasonable. *Compare* (Ex. 1 at 5, 7) (listing conditions of release) *with Sayonkon*, 2012 WL 1621149, at *3 (finding substantially similar conditions of release are reasonable).

### 2. Repetition

The second exception to the mootness doctrine—that the issue identified is "capable of repetition yet evading review"—is narrow and only applies "when there is a 'reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id.* at *3 (quoting *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir. 1988)). Here, there is no evidence that Lee will be detained again for a lengthy period of time. To the contrary, Respondents are working to remove Lee from the United States. (Ex. 1 at 3) (advising Lee that "[o]nce a travel document is obtained, [he] will be required to surrender to ICE for removal"). Further, whether Lee violates the conditions of his release is a circumstance wholly within Lee's control and therefore, does not satisfy the capable-of-repetition aspect of this exception. *See Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (stating that plaintiffs' claims that at least one of them is likely to violate parole and return to the correctional facility with complained-of Americans with Disabilities Act violations does not satisfy the "capable-of-repetition" mootness exception because that result is within their control and "they are required by law[] to prevent such a possibility from occurring" (internal quotation marks omitted)).

### 3. Voluntary Cessation of Wrongful Conduct

The third exception—voluntary cessation of the illegal conduct that may be resumed—is of particular concern when an alien is released following a habeas petition and only moots litigation "'if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.'" *Sayonkon*, 2012 WL 1621149, at *4 (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam)). This exception was the subject of the Court's prior order. *See* (Oct. 2016 Order). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the

allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The documents submitted make clear that ICE tracks whether detainees have filed habeas petitions. *See* (Ex. 2 at 2, 4, 6, 11). Further, although the ERO submitted the checklist to HQ RIO for the 180-day review before Lee filed his Petition, HQ RIO did not issue its decision to release Lee until after Lee filed the Petition. *See* (Pet.); (Ex. 2 at 3, 10–11). There is nothing in the record, however, that suggests ICE decided to release Lee as a result of the Petition. Instead, the record reflects that in May 2016, ICE believed that the Laotian embassy would provide Lee a travel document. (Ex. 2 at 6). The embassy later said it would not issue Lee a travel document. (Ex. 2 at 2). Thus, ICE's position that there was a significantly likelihood of removal in the reasonably foreseeable future, as it determined in May 2016, changed upon receiving further information. *See* (*id.* at 2, 6).

Additionally, the Court is satisfied that Respondents met their burden to show that "the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 190. Lee was initially detained consistent with a final removal order. (Ex. 1 at 12). As Respondents argue, now that Lee has been released under supervision, he can only be detained if one of two conditions is satisfied: either Laos or Thailand issues a travel document or Lee violates the terms of his release. (Suppl. Resp. at 8); (Johnson Decl. ¶ 9); (Ex. 1 at 2–3); *see also* 8 C.F.R. § 241.13(i) (providing that when conditional release is based on a lack of SLRRFF, the conditional release may be revoked if the alien violates conditions of release or if ICE determines that there is SLRRFF based on changed circumstances). Thus, "the government has placed itself under new legal limitations—limitations that did not exist at the time that [Lee] filed his habeas petition[] and that make it impossible for the government to resume the objectionable

conduct." *See Kargbo v. Brott*, No. 15-cv-2713 (PJS/LIB), 2016 WL 3676162, at *2 (D. Minn. July 6, 2016) (Schiltz, J.). In other words, if the government detains Lee subsequent to his release, any potential illegalities of that detention would be "for different factual and legal reasons" compared to the detention Lee challenges in his Petition. *See id.*

Therefore, the Court concludes that the exception to the mootness doctrine based on Respondents' voluntary cessation of the allegedly unlawful conduct does not apply.

### 4. Class Action

Finally, the class action exception does not apply because Lee seeks individual and not class action relief. *See* (Pet.).

### 5. Injunctive Relief

Lee also seeks injunctive relief preventing Respondents from "further unlawful detention." (Pet. at 5). In light of the Court's analysis that his detention is unlikely to be repeated, the Court will not recommend the issuance of an injunction. Nonetheless, consistent with Eighth Circuit law, the Court recommends dismissal of the Petition without prejudice, providing Lee with an avenue for relief if he believes he is once again the subject of unlawful detention. *See Ali*, 419 F.3d at 724 (remanding to the district court to dismiss without prejudice the application for a writ of habeas corpus as moot).

### 6. Conclusion

But because Lee was released, the Court cannot order the relief sought. Further, none of the exceptions to the mootness doctrine apply. Therefore, the Court recommends the Petition be denied as moot and this case be dismissed without prejudice.

### III. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner Toua Pao Lee's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. Nos. 1, 3-1] be **DENIED as moot**; and

2. This case be **DISMISSED without prejudice**.

Dated: March 9, 2017

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.